STATE ex rel. MURRAY, Governor, v. CARTER, State Auditor, et al.

No. 25114.    Feb. 27, 1934.

Rehearing Denied March 20, 1934.

Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiff.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendants.

McNEILL, J. This is a mandamus action brought on behalf of the state of Oklahoma ex rel, Wm. H. Murray, Governor, against Frank C. Carter, State Auditor of the state of Oklahoma, and Ray O. Weems, State Treasurer, to compel the defendants to allow and pay eight claims against the state, which have been set forth in eight separate causes of action.

The first seven of said claims and causes of action involved claims which were approved by the State Board of Public Affairs to be paid from account No. 15, fund No. 33, the same being an item of appropriation set forth in House Bill No. 240 of the Thirteenth Legislature of Oklahoma, Ses-

**474**

sion Laws 1931 (Harlow) page 305, for the State Penitentiary at McAlester for the fiscal year ending June 30, 1933. Said item of appropriation being as follows:

"To be used in case of an increased number of prisoners _____$92,400.00"

The eighth claim involves a claim which was approved by the State Board of Public Affairs to be paid from account No. 13, fund No. 33, the same being an item of appropriation set forth in said House Bill No. 240, for the Eastern Oklahoma Tubercular Sanatorium at Talihina, Okla., for the fiscal year ending June 30, 1933, said item of appropriation being as follows:

"To be used in case of an increased number of patients _____$30,140.00"

It is alleged in the fifth numbered paragraph of the first cause of action of plaintiff's petition that on June 15, 1933, the State Board of Public Affairs, acting under authority of the following provision of section 1 of said House Bill No. 240, to wit:

"Provided, that funds appropriated under this act may be transferred from one item to another upon recommendation of the board having control of such institutions, and with the approval of the Governor, but in no event exceed the total appropriation. * * *"

—adopted a resolution providing for the transfer of funds appropriated by said House Bill No. 240 for the fiscal year ending June 30, 1933, for said penitentiary:

"* * * from different items of said appropriation to the item of the same fiscal year designated 'To be used in case of an increase in the number of prisoners— $92,400' and such transfer was approved by William H. Murray, as Governor of the state of Oklahoma, on June 15, 1933. A copy of said resolution, marked 'Exhibit A,' is hereto attached and made a part of this petition. By such transfer the balance then remaining in said designated item of appropriation, to wit: $62,600, was increased to the sum of $155,000."

Inasmuch as the claims involved in the second, third, fourth, fifth, sixth, and seventh causes of action of plaintiff's petition only aggregate the sum of $7,020.59, and as the State Board of Public Affairs approved all of said claims to be paid from said account No. 15, fund No. 33, before it approved the claim set forth in the first cause of action of plaintiff's petition to be paid from said fund, there was an ample amount in said fund to pay said claims, even though said transfer had not been made. It is, therefore, immaterial, in so far as said claims are concerned, whether

or not said transfer was authorized by law. However, in so far as the claim mentioned in plaintiff's first cause of action is concerned, inasmuch as same is for $109,756, which is far in excess of the balance remaining in said fund prior to the time said transfer was made, to wit, $62,600, it is absolutely essential, in order for said claim to be paid, that said transfer be legal, otherwise, even though it be conceded for sake of argument that said account 15, fund 33, is a valid item of appropriation, there would not be sufficient moneys in said fund to pay said claim.

To this petition defendants have filed their general demurrer.

The defendants urge three propositions:

### First Proposition.

"Each of the two items of appropriation here involved is conditional and contingent, and neither item distinctly specifies 'the sum appropriated and the object to which it is to be applied,' as required by section 55 of article 5, of the Constitution of Oklahoma."

### Second Proposition.

"The transfer of $92,400 from other items of appropriation of the State Penitentiary to the balance remaining in account No. 15, fund No. 33, was invalid."

### Third Proposition.

"Chapter 98, Oklahoma Session Laws 1933, prevents the use of account No. 15, fund No. 33, to pay the claim involved in plaintiff's first cause of action."

We consider the first proposition of the defendants. They contend that each of the aforesaid two items, to wit:

"To be used in case of an increase in the number of prisoners _____$92,400.00"

—and:

"To be used in case of an increased number of patients _____$30,140.00"

—are invalid. They insist:

(1) That these items do not distinctly specify (a) the sums appropriated; and (b) the objects to which they are to be applied, as required by section 55, of article 5, of our Constitution.

(2) That said items are conditional and contingent.

The specific part of said section 55 is as follows:

"No money shall ever be paid out of the treasury of this state * * * except in pursuance of an appropriation by law * * * and every such law making a new appropriation * * * shall distinctly specify the object to which it is to be applied. * * *"

In the case of Menefee, State Treas., v. Askew, State Game and Fish Warden, 25 Okla. 623, 107 P. 159, this court, in the first paragraph of the syllabus, said:

"An appropriation in this state is an authority of the Legislature given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum from a designated fund out of the treasury in a given year, for a specified object, or demand against the state."

Paragraph 2:

"No arbitrary form of expression or particular words are required by the Constitution in making an appropriation, which may be made by implication when the language employed reasonably leads to the belief that such was the intention of the Legislature."

But the court further held, in syllabus, fourth paragraph, that:

"The provision of section 3, art. 6 [Sess. Laws 1909, c. 19], providing that the Game and Fish Warden shall be reimbursed for his actual and necessary expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses, does not constitute a valid appropriation, as the sum certain appropriated is not distinctly specified."

It will thus be seen that in that case the provision of said legislative act which appropriated the actual and necessary expenses of the Game and Fish Warden was definitely limited for the purposes stated to a definite specified amount, and was held valid, but when no definite limit was placed upon the expenses of the Warden, the attempted appropriation therefor was held invalid.

Each of said items herein restricts the appropriation to a "definite limit for purposes stated." See Edwards v. Childers, State Auditor, 102 Okla. 158, 228 P. 472.

In Miller v. Childers, State Auditor, 107 Okla. 57, 238 P. 204, this court said:

"Said section 55 of art. 5, supra [Const. Okla.] requires an appropriation bill to meet five requirements, as follows, to wit: (a) Make an appropriation of money; (b) provide for its payment within 30 months; (c) specify the sum appropriated; (d) state the object to which said sum shall be applied; and (e) not require reference to any other law to fix the sum appropriated."

We apply these five requirements to aforesaid two items of appropriation. Requirements (b) and (e) are not involved.

Every legislative enactment is entitled to a reasonable application of the law. House Bill No. 240 was complete in its terms and conditions, but its effect and ultimate operation as to the said item of appropriation of $92,400 for the penitentiary, and said item of appropriation of $30,140 for the Tubercular Sanatorium at Talihina, depended upon the contingency of there being an increased number of prisoners at the State Penitentiary and an increased number of patients at the Tubercular Sanatorium at Talihina. It was a proper exercise of legislative power for the Legislature to make the items of appropriation in question dependent upon the existence of a fact happening or to take effect in the future. The Legislature in making these separate items of appropriation determined that there could be no efficacy to the items appropriated for the purposes specified until it was ascertained that the existence of the facts of an increased number of prisoners or an increased number of patients had happened. The great weight of authority, as well as our own legislative interpretations, supports appropriation of public funds based upon the happening of a certain contingency. When the ascertainment of those facts to exist as determined by some duly authorized body, board, or tribunal, the legislative enactment then becomes operative. See State v. Butler Co., 77 Kan. 527, 94 P. 1004; Phoenix Ins. Co. v. Welch, 29 Kan. 672; Blanding v. Burr, 13 Cal. 343; Smith v. Board of Com'rs of Atchison County, 81 Kan. 91, 105 P. 37; State ex rel. Miller, Atty. Gen., v. Taylor, 22 N. D. 362, 133 N. W. 1046; Thalheimer v. Board of Sup'rs of Maricopa County, 11 Ariz. 430, 94 P. 1129; Thompson v. Trice, 145 Ark. 143, 223 S. W. 367; Miller v. Witcher, 160 Ark. 479, 254 S. W. 1063; State ex rel. Zilisch v. Auer, 197 Wis. 284, 221 N. W. 860; Adams v. Beloit, 105 Wis. 363, 81 N. W. 869; State ex rel. Van Alstine v. Frear, 142 Wis. 320, 328, 125 N. W. 961; Ward v. State ex rel. Parker et al. (Ala.) 45 So. 655; Hand v. Stapleton, 135 Ala. 156, 33 So. 689; McCreless v. Tenn. Valley Bank (Ala.) 94 So. 722; Lothrop v. Stedman, 42 Conn. 583, Fed. Cas. No. 8519; In Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716; Rouse v. Thompson, 228 Ill. 522, 81 N. E. 1109; Mayor and City Council of Baltimore v. Clunet et al., 23 Md. 449; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294.

In the early case of Phoenix Ins. Co. v. Welch, supra, Justice Brewer, in writing the opinion, says:

"Our laws abound in cases in which a statute is made dependent upon the action of some tribunal or body, or upon some other contingency, and is therefore practically dormant until such action takes place or contingency happens."

In the case of Blanding v. Burr, supra, the Supreme Court of California said:

"Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the Legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain; and, among others, the voluntary acts of the parties upon whom they are designed to operate. They are not the less perfect and complete when passed by the Legislature, though future and contingent events may determine whether or not they shall ever take effect. In anticipation of invasion, or insurrection, or local disturbance, or other emergencies requiring the exercise of special powers, acts are constantly passed, and yet no one has ever questioned their validity as laws, because dependent in their operation upon occasions which may never arise. So the Legislature may confer a power without desiring to enforce its exercise, and leave the question whether it shall be assumed, to be determined by the electors of a particular district. The Legislature may determine absolutely what shall be done, or it may authorize the same thing to be done upon the consent of third parties. It may command, or it may only permit; and in the latter case, as in the former, its acts have the efficacy of laws. * * * 'Half the statutes on our books,' says the Supreme Court of Pennsylvania, in noticing a similar objection to an act of the Legislature of that state, 'are, in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. * * *' (Mores v. City of Reading, 21 Pa. 202.) And on a similar question, the Supreme Court of Ohio observes that the true distinction 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter, no valid objection can be made.' (Cincinnati W. & Z. R. Co. v. Com'rs of Clinton County, 1 Ohio St. 88.)"

In State ex rel Zilisch v. Auer, supra, the Supreme Court of Wisconsin said:

"The Legislature cannot delegate the power 'to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate' (State ex rel. Wisconsin Inspection Bureau v. Whitman [Wis.] 220 N. W. 929, 941), but 'it can make a law to become operative on the happening of a certain contingency or on the ascertainment of a fact upon which the law makes or intends to make its own action depend' (State ex rel. Van Alstine v. Frear, 142 Wis. 320, 324 325, 125 N. W. 961, 963, 20 Ann. Cas. 633).

This has been the settled law of Wisconsin for more than half a century. State ex rel. Attorney General v. O'Neill, 24 Wis. 149, 153; Smith v. Jamesville, 26 Wis. 291, 294."

In the case of Smith v. Board of Com'rs of Atchison County, 81 Kan. 91, 105 P. 37, it was held that:

"The provision of the Act of 1905 (Laws 1905, p. 379, c. 227), that the extra allowance for boarding and lodging prisoners shall not be operative until the board of county commissioners of the county shall make an order in writing to that effect and shall enter the same on their journal, is not an invalid delegation of legislative power."

The defendants cite in support of their first proposition the case of Lingo-Leeper Lumber Co. v. Carter, State Auditor, 161 Okla. 5, 17 P. (2d) 365. In that case, House Bill No. 240, Session Laws 1931, page 305 (Harlow), being an act of the Legislature "making appropriations from the general revenue of the state of Oklahoma for all state educational and eleemosynary and penal institutions, and from the revolving funds of certain institutions, * * * " was considered in reference to the appropriations for the State Penitentiary at McAlester. We dealt with the appropriation out of the "Twine Plant Revolving Fund" and the "General Revolving Fund," which sums were to "be used for the construction of additional cell houses or additions to cell houses, or for the establishment of substations and camps, wherever prisoners may be most profitably used."

It was contended that funds were to be expended from this appropriation for the purpose of constructing a penal institution, separate and apart from the State Penitentiary at McAlester. In that case, we held that the language used in said House Bill 240, to wit:

"These sums may be used for the construction of additional cell houses or additions to cell houses or for the establishing of substations and camps wherever prisoners may be most profitably used."

—did not authorize the expenditure of funds for the purposes therein stated to be made by the Board of Affairs for a permanent penal institution at Stringtown. This opinion does not support the contentions now urged by defendants.

After the Lingo-Leeper opinion was rendered, the Fourteenth Legislature, in an apparent endeavor to comply with that opinion, enacted House Bill No. 228, O. S. 1933, which authorized and directed the State Board of Public Affairs to establish and construct at Stringtown, in Atoka coun-

ty, "a substation of the Oklahoma State Penitentiary, which shall be recognized, maintained, and operated as part of the said penitentiary under the same general control * * * as the said penitentiary. * * *"

This act made the substation at Stringtown a part of the State Penitentiary and when it did so the appropriation previously made "for the payment of salaries, maintenance, and other expenditures" of said penitentiary, including the aforesaid $92,-400, to be used in case of an increased number of prisoners, was available for the salaries, maintenance, and other expenditures of the part of the penitentiary located in the city of McAlester. Obviously, the purpose of the erection of the substation at Stringtown was for the general public welfare for the purpose of taking care of the increased number of prisoners confined at the State Penitentiary at McAlester.

The defendants also contend that the item of appropriation in question contravenes section 56 of article 5 of our Constitution, which is as follows:

"The General Appropriation Bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

In this connection, defendants, in substance, urge that the object of this provision of the Constitution is to inhibit the inclusion of matters of legislation from an appropriation bill, and also urge that the provision of the act providing for the transfer of funds upon recommendation of the Board of Affairs, with the approval of the Governor, was a delegation of legislative power in violation of article 4, section 1, of the Constitution, which is as follows:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments; the legislative, executive, and judicial, and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

In the instant case we are not dealing with the General Appropriation Bill, for it shall contain nothing but appropriations for the expenses of the legislative, executive,

and judicial departments of the state. Whereas, the appropriation under consideration is for an administrative institution owned and controlled by the state.

Under defendant's second proposition, it is contended that:

"The transfer of $92,400 from other items of appropriation of the State Penitentiary to the balance remaining in account No. 15, fund No. 33, was invalid."

The provision of the transfer of the funds is as follows:

"Provided, that funds appropriated under this act may be transferred from one item to another upon recommendation of the board having control of such institutions, and with the approval of the Governor, but in no event exceed the total appropriation."

The amount of the appropriation made to the State Penitentiary by House Bill No. 240, for the fiscal year ending June 30, 1933, was distinctly specified, to wit, the sum of $782,730, and the object to which that sum was to be applied was distinctly stated, to wit: "for the payment of salaries, maintenance, and other expenditures." The bill was a completed law when passed by the Legislature and signed by the Governor. The Constitution of this state does not require the Legislature to itemize the amount appropriated for an institution in an appropriation bill, and the appropriation is distinctly specified, as provided by section 55 of article 5 of the Constitution, when the appropriation is made in a lump sum "for the payment of salaries, maintenance, and other expenditures" of the institution named. By reference to past appropriational bills, as applied to the State Penitentiary at McAlester, it appears that there was no detailed itemization in said bills until the Eighth Legislature convened in 1921. Counsel for plaintiff correctly summarize in their brief these prior institutional appropriations relating to the State Penitentiary, as follows:

"The Second Legislature made an appropriation of $146,000, or so much thereof as may be necessary, 'to be used for the care and maintenance of the state prisoners for the fiscal year ending June 30, 1910,' Sess. L. 1909, p. 65. The Third Legislature made an appropriation to the penitentiary 'for the support and maintenance ____$160,000' for each of the years 1912 and 1913. Sess. L. 1910-11, p. 377. The Fourth Legislature made an appropriation to the institution 'For support and maintenance _$125,000' for the years 1914 and 1915, respectively, Sess. L. 1913, p. 443. The Fifth Legislature appropriated the sum of $180,000 'for the care and maintenance of the state prisoners at McAlester' for each of the fiscal years ending June 30,

1916, and June 30, 1917. Sess. L. 1915, p. 91. And appropriations were made in like manner by the Sixth Legislature (Sess. L. 1917, p. 91), and the Seventh Legislature (Sess. L. 1919, p. 169). Beginning with the appropriation bill of the Eighth Legislature, the total sum appropriated was divided between items for salaries and maintenance (Sess. L. 1921, p. 238), and that method of making the appropriations was continued until House Bill No. 240 was enacted by the Thirteenth Legislature."

A review of appropriation bills shows that appropriations based upon contingencies have been enacted in many of our appropriation bills in the past.

Senate Bill 435, being the General Appropriation Bill, chapter 21, page 41, Session Laws 1917, after making appropriations for the Corporation Commission, salary of Commissioners, salary of secretary, rate expert, salary per annum, other clerks, salary of marshal, stenographer, court expenses, office supplies, and other appropriations for items therein mentioned, contains the following language:

"The Commission is hereby authorized to use any of the above expense fund for any other items designated above, if in their judgment it is necessary for the proper conduct of this department."

House Bill 195, chapter 52, p. 97, Session Laws 1917, was an act making an appropriation for the purpose of installing and equipping business enterprises; occupation factories, shops, manufactories, farming and other business to be used at the Oklahoma State Reformatory located at Granite, Okla. Section 1 of the act provides:

"There is hereby appropriated out of the State Treasury, not otherwise appropriated, the following sums, or so much thereof as may be necessary for the purpose of installing and equipping such business enterprises; occupation factories, shops, manufactories, or any farm or any other business to be used by the State Board of Public Affairs with the approval of the Governor as in their judgment may be necessary to employ the inmates of the Oklahoma State Reformatory, located at Granite, Okla., as follows:

"For the purpose above enumerated for the fiscal year ending June 30, 1918, thirty-two thousand five hundred ($32,500) dollars.

"Approved this 22nd day of March, 1917."

Under Senate Bill 413, chapter 60, Session Laws 1917, p. 105, being an act making an appropriation for the support and maintenance of certain state educational institutions for the fiscal year ending June 30, 1918, and June 30, 1919, the total appropria-

tion being $747,959, section 3 of that act provides as follows:

"The amounts herein appropriated may be transferred from one fund to another or may be used for the purposes incidental to the proper conduct of said institutions, provided, such use is authorized by a joint resolution of the Board of Control of said institutions and by the State Board of Public Affairs, which resolution shall be signed by the President and Secretary of the Board of Control of said institution and by two members of the State Board of Public Affairs."

It is to be observed that the sum appropriated for a specific object specified in the act, which might be necessary for the purposes of the object specified in the act, and which were to be used by the State Board of Public Affairs, was to be approved by the Governor.

In House Bill No. 15, chapter 102, p. 117, Special Session 1923-24, relating to the appropriation for state educational institutions, which provides for salaries, support, and maintenance of A. & M. College, Stillwater, Okla., the following provision appears in said appropriation act, to wit:

"Provided that the regular teaching staff shall teach the summer school without additional compensation."

In fact, there is no innovation or nothing novel in the present legislative enactment in the transferring of funds or the approval of expenditures of the funds based upon a contingency to be approved by some administrative board, or by the Governor.

In 12 C. J. 846, the following rule is announced:

"The Legislature may delegate to executive officers the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is, by its terms, made to depend. * * *"

And in 12 C. J. 864:

"Nature of contingency. This contingency may consist of some act or acts to be performed by public officers. * * *"

These earlier acts relating to the appropriations for the State Penitentiary have stood unchallenged and meet the requirements set forth in Miller v. Childers, supra.

It is apparent that the Legislature did not intend to say that only the sum estimated for each specific purpose, such as salaries, etc., should be used and no more, for it provided for the transfer of funds from one item to the other. The Legislature, in providing for the transfer of funds from one item of the appropriation to another, granted no greater power to the State Board

and the Governor than the Board of Affairs would have had in the event the appropriation had been made in a lump sum, and no estimate made of the sums required for the various purposes of the penitentiary, as had been done in previous years. It is apparent that the Legislature intended to and did appropriate the total sum of $782,730 for the penitentiary. The provision of the bill dividing this total sum into the named amounts for salaries, general repairs, etc., was merely administrative, and by the proviso for the transfer of the items, the Legislature provided that the direction need not be followed in the event the Board of Affairs, intrusted with the management of the institution, found the amount specified in any one item not needed or was insufficient.

The management and control of the State Penitentiary is placed under the State Board of Affairs of this state by the provision of section 5300, O. S. 1931, and as a check upon the State Board of Affairs, it was provided in the act in question that the transfer should be with the approval of the Governor. We are not concerned in this case with the result which would obtain if the Governor failed to approve the action of the Board of Affairs, and whether or not such items would then stand as appropriated for the use of the State Board of Affairs.

In support of their contention that the proviso of House Bill No. 240, under consideration, is invalid, the defendants cite State ex rel. Hudson v. Carter, 167 Okla. 32, 27 P. (2d) 617. In that case there was involved the question of whether the Legislature could lawfully provide for an amount appropriated in the annual general appropriation bill to the Corporation Commission for "Public Utilities—Appraisal, Audit and Litigation." The court held the provision void for three reasons: First, that there is no authority of law for the Governor to approve an expenditure of money appropriated for the purpose of enabling the Corporation Commission to perform its constitutional duties required by the provision of section 29, article 9, of the Constitution; second, the attempt to authorize the Governor to exercise such power is void under the provisions of section 36, article 5, of the Constitution; and third, because the Legislature is without authority to confer the power upon the Governor to do indirectly a thing which the governor could not be empowered to do directly: that is, to reduce an item in an appropriation bill."

The reasons assigned for holding the appropriation void in that case have no application to the question here involved.

House Bill No. 240 does not attempt to authorize the State Board of Public Affairs or the Governor to either add to or reduce the sum of $782,730, appropriated for the penitentiary, but it very properly recognized or conferred upon the Board of Public Affairs and the Governor administrative power in the disbursement of such funds.

The defendants contend under their third proposition that by the repeal, in section 5 of House Bill No. 228, chapter 98, Laws 1933, of the item of $115,000 out of the Twine Plant Revolving Fund, and $115,000, out of the General Revolving Fund of the Oklahoma State Penitentiary, made in said House Bill No. 240, the Thirteenth Legislature repealed, by implication, all other items of appropriation made in said bill for the construction of substation and camps, including, of course, the item in question, "to be used in case of an increase in the number of prisoners."

The two items expressly repealed immediately followed the item which it is contended was repealed by implication, which shows that the Legislature must not have overlooked the last mentioned item.

The general rule is that repeal of statutes by implication are not favored by the courts. In 59 C. J. page 905, it is said:

"The courts are slow to hold that one statute has repealed another by implication, and they will not make such an adjudication if they can avoid doing so consistently, or on any reasonable hypothesis, or if they can arrive at another result by any construction which is fair and reasonable. Also, the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication leading to an adjudication of repeal by implication unless it is inevitable, and a very clear and definite reason therefor can be assigned. Furthermore, the courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary, and irresistible."

And, at page 910, of the same volume, it is stated:

"The specification of certain sections in an act as repealed is equivalent to a declaration that remaining sections shall continue in force, unless they are absolutely inconsistent with the repealing act, or a general intent to effect a further repeal is otherwise manifested."

The rule was stated by the Supreme Court of California in Fay v. District Court, 254 P. 896, as follows:

"The application of this principle to the instant problem is attended with another principle of interpretation of almost equal importance, which is that, when in any enactment there appears an express modification or repeal of certain provisions in a former enactment, such express modification or repeal of the portions thereof thus affected will be held to disclose the full intent of the framers of the later enactment as to how much or what portion of the former it was intended to modify or repeal. This upon the principle, 'expressio unius, est exclusio alterius;' and in such a case an implied modification or repeal of such portions of the former law as are not expressly referred to as being repealed or modified is to be all the more avoided in determining the intent and effect of the latter enactment."

We have followed this rule. See Goodson v. United States, 7 Okla. 117, 54 P. 423; Atchison, T. & S. F. R. Co. v. Haynes, 8 Okla. 576, 58 P. 738; Reynolds v. Reynolds, 94 Okla. 114, 221 P. 109.

We believe that the item of appropriation involved here was not repealed by the enactment of House Bill No. 228 of the Fourteenth Legislature.

What we have said with reference to the appropriation for the penitentiary fully covers the proposition raised as to the appropriation for the Tubercular Sanitarium at Talihina.

The demurrer is overruled, and a writ of mandamus ordered as prayed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.

ANDREWS, J., absent.