*Ex parte* CARSON WHITEHOUSE.

No. A-335. Opinion Filed October 18, 1909.

(104 Pac. 372.)

COURTS—County Superior Courts—Jurisdiction. Section 2 of. the act of the Legislature (Sess. Laws 1909, p. 181, c. 14, art. 7) establishing county superior courts in giving to such court concurrent jurisdiction with the county court in all criminal matters is not in conflict with section 12, art. 7, Const. Okla.

(Syllabus by the Court.)

Original petition by Carson Whitehouse for writ of *habeas corpus.* Writ denied.

3 Cr.—7

This is an original action by petition for a writ of *habeas corpus* to release Carson Whitehouse from imprisonment on judgment and sentence of the superior court of Pittsburg county. The petitioner was tried in the superior court of Pittsburg county on an information charging him with the crime of unlawful possession of liquor. He was convicted and adjudged to serve a term of 30 days in the county jail of Pittsburg county and to pay a fine of $50.

*J. G. Harley, Wallace Wilkinson,* and *Guy L. Andrews,* for petitioner, citing: 11 Cyc. 982, and cases therein cited; *Allen v. Board of State Auditors,* 122 Mich. 324; *Parker v. State ex rel.,* 133 Ind. 178; *State ex rel. v. School Board,* 76 Wis. 177; *Powell v. Spackman,* 7 Idaho, 692; *People ex rel. v. Hutchinson,* 172 Ill. 486.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for respondent.

OWEN, JUDGE (after stating the facts as above). The petition in this case presents one question only; that is, the jurisdiction of the superior court in criminal cases. The contention is made that the act (Laws 1909, p. 181, c. 14, art. 7) giving to the superior court concurrent jurisdiction with the county court in all criminal matters is unconstitutional, and that the superior court cannot exercise jurisdiction in criminal cases of which the county court has jurisdiction. That part of the act necessary to copy here is as follows:

"Section 1. There is hereby created and established in every county in this state having a population of thirty thousand (30,000) or more, and having a city therein with eight thousand (8,000) or more, as now or hereafter shown by the last federal census, a court of civil and criminal jurisdiction co-extensive with the county, to be known as the superior court of such county, which shall be a court of record, and the said superior court shall be held in the largest city of such county.

"Section 2. Every such court shall have and exercise concurrent jurisdiction with the district court, in all proceedings, causes or matters, and concurrent jurisdiction with the county court in all civil and criminal matters, except matters of probate."

It is contended that section 2 of this act is in conflict with section 12, art. 7. Const. Okla.; that section 12 gives to the county court exclusive jurisdiction of misdemeanor cases of which justices of the peace have not jurisdiction.

The views of counsel for petitioner have been urged with great force, and, on a casual reading of the Constitution, as printed in Bunn's Annotated Edition, one may be constrained to take the view as presented by counsel; but a more careful examination of the manuscript copy of the Constitution on file in the office of the Secretary of State will disclose the error. We find on examination of the manuscript copy that the form as to paragraphing and subheads, as appears in Bunn's Annotated Edition, does not appear in the original copy. In the original copy section 12 appears as one paragraph. We are not to be understood as criticising the arrangement into paragraphs and subheads by Mr. Bunn, but, in arriving at the conclusions we have in this case, we construe this entire section together, and as it appears in the original copy of the Constitution. The section, as it appears in the original manuscript copy, is as follows:

"Sec. 12. The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest: Provided, that the county court shall not have jurisdiction in any action for malicious prosecution, or in any action for divorce or alimony or in any action against officers for misconduct in office, or in actions for slander or libel, or in actions for the specific performance of contracts for the sale of real estate, or in any matter wherein the title or boundaries of land may be in dispute or called in question; nor to order or decree the partition or sale of real estate, not arising under its probate jurisdiction. It shall have such appellate jurisdiction of the judgments of justices of the peace in civil and criminal cases as may be provided by law, or in this Constitution. The county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction. In the absence of the judge of the district court from the county, or in case of his disqualification for any reason, the county court,

or judge thereof, shall have power to issue writs of injunction in matters about to be brought or pending in the district court; and to issue writs of injunction, mandamus, and all writs necessary to enforce the jurisdiction of the county courts; and issue writs of *habeas corpus* in cases where the offense charged is within the jurisdiction of the county court or any other court or tribunal inferior to said court. When the county judge is disqualified in any case pending in the county court, a judge *pro tempore* may be selected in the manner provided for the selection of judges *pro tempore* in the district court."

This section must be construed as a whole, and it must be construed together with the other sections of the Constitution. The entire Constitution must be construed as a whole, and the language of this section must be construed so as to arrive at the meaning and intention of the framers of the Constitution and the people who adopted it, and at the same time preserve the general purpose and intention of the entire Constitution. It is a cardinal rule in the interpretation of the Constitution that the instrument must be so construed as to give effect to the intention of the people who adopted it, and this intention is to be sought by a construction of the entire instrument. The whole Constitution is to be examined in order to determine the meaning of any part, and the construction of any one section is to be such as to give effect to the entire instrument, and not to raise any conflict between its parts which can be avoided. And, in construing a statute with reference to the Constitution, the courts will not construe the statute so as to make it conflict with the Constitution, but rather will put such interpretation upon it as will avoid conflict if such construction be possible.

Section 1, art. 7, Const. (section 169, Bunn's Ann. Ed.), is as follows:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

This section gives the Legislature the power to establish the superior courts, and the power given is unrestricted. There are

no limitations in this section on the jurisdiction to be given to the inferior courts. The question arises: Is the sentence in section 12, art. 7, giving the county court exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction, a limitation on the power of the Legislature as granted in section 1? If we look only to section 12, as it appears in the annotated edition of the Constitution, with its arrangement of paragraphs and sentences, our answer must be in the affirmative, or even if we look to the section as found in the original manuscript copy, and be governed strictly by the punctuation and arrangement of sentences, our answer might be the same. But a slight transposition of the sentences will easily authorize a different construction of this section. On careful reading of section 12, as it appears in the original copy, it will be conceded that that part of the section contained in the proviso, which excepts from the jurisdiction of the county court certain actions, need not be considered in construing that part fixing the jurisdiction. Neither is it necessary to construe that part of the section giving to the judge of the county court the jurisdiction of a district judge in certain cases. Then this section may be construed as though it appeared as follows:

"Sec. 12. The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest: it shall have such appellate jurisdiction of the judgments of justices of the peace in civil and criminal cases as may be provided by law, or in this Constitution. The county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction."

It will be noticed that this section begins with the language, "The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law," etc. The question arises: Does the phrase, "and until otherwise

provided by law" qualify the clause, "the county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction," or does the phrase "and until otherwise provided by law" qualify only the succeeding clause, "shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest"? It will be observed that a colon appears after the word "interest," and that a period appears between the words "Constitution" and "The," and it might be contended that the sentence, "the county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction," being separated from the rest of the section by the period following the word "Constitution," that the phrase "until otherwise provided by law" does not qualify or refer to this sentence. If the period between the words "Constitution" and "The" were a semicolon or comma, then there would be no doubt that the phrase "until otherwise provided by law" qualified the sentence in which exclusive jurisdiction is given to the county court. We think the proper construction of this section is to read the section as though that period were a semicolon. If the constitutional convention had intended to make the "exclusive jurisdiction" permanent in the county court, as was the probate jurisdiction, then the proper order for this sentence was after the phrase giving the original probate jurisdiction to the county court, and preceding the phrase "until otherwise provided by law." The section would then have read:

"The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and shall have jurisdiction concurrent with justices of the peace in misdemeanor cases of which justices of the peace have not jurisdiction, and until otherwise provided by law," etc.

It is clear to our minds that the intention of this section was to fix permanently in the county court original jurisdiction in all probate matters, and that all other jurisdiction given this court

should remain in said court until otherwise provided by law. The authorities are uniform in holding that a court may recur to the public history of the times and conditions of the country in order to get the true meaning of the law as well as the meaning of the particular provisions thereof. This rule was announced in the case of *Aldridge v. Williams,* 3 How. 24, 11 L. Ed. 469, and has been repeatedly followed by that court as well as other courts of last resort. We feel safe in saying that the members of the constitutional convention in preparing the Constitution and the people in adopting it had in mind the great volume of probate business in this state, especially that portion of the state formerly Indian Territory. They must have realized that as the estates of the minors of the Five Civilized Tribes, including a disposition of their land came under the direction of the probate courts, that the time of these courts would necessarily be given almost exclusively to the disposition of probate matters, and by this section intended to provide that when this condition arose the Legislature would be authorized under section 1 of article 7, above quoted, to create the necessary courts to relieve the county courts of the jurisdiction other than probate.

As early as the case of *Ogden v. Saunders,* 12 Wheat. 267, 6 L. Ed. 606, decided January, 1827, the Supreme Court of the United States held that the derangement of words and even sentences of the law might be tolerated in order to arrive at the apparent meaning of the Legislature, to be gathered from other parts and from the entire scope of the law. In the case of *Werckmeister v. Pierce,* 63 Fed. 445, the United States Circuit Court held that rearrangement of clauses or parts of sentences is justifiable under the most common circumstances, and is especially justifiable in order that the statute may not be read contrary to its plain purpose and the general public policy. In construing constitutions the same rules must govern that govern in construing statutes. The Constitution is the supreme law of the land, and it differs from an act of the Legislature in having been adopted by the whole people.

In this case it has been urged with considerable force that

in using the word "exclusive" the intention was to fix the juris-
diction permanently.  We are inclined to the view that the word
"exclusive" here is used to distinguish between this and the other
courts provided for in the Constitution.  True the justice of the
peace court, as provided for in the Constitution, was not given
jurisdiction of the class of misdemeanors referred to in this sen-
tence, but there were other courts created and the jurisdiction
fixed.  The constitutional convention not only provided for a
Supreme Court, district courts, county courts, and justice of the
peace courts, but divided the jurisdiction between the courts
created, and gave to the county court exclusive jurisdiction of
this class of misdemeanors.

In the case of *State v. Jones,* 73 Me. 280, the court in con-
struing a statute giving to the police court of Rockland exclu-
sive jurisdiction said:

"The act establishing the police court of Rockland confers
upon it 'exclusive jurisdiction over all such criminal offenses com-
mitted within the limits of said city as are cognizable by justices
of the peace or trial justices.'  This means exclusive, not as
against all courts, but only as against courts of the same grade, as
against justices of the peace and trial justices."

In the case of *Cherokee Nation v. Georgia,* 5 Pet. 18 (8 L.
Ed. 25), Chief Justice Marshall used this language:

"It has been also said that the same words have not necessar-
ily the same meaning attached to them when found in different
parts of the same instrument.  Their meaning is controlled by the
context.  This is undoubtedly true.  In common language the same
word has various meanings; and the peculiar sense in which it
is used in any sentence is to be determined by the context."

Again, the same eminent jurist in the case of *United States
v. Maurice,* Fed. Cas. No. 15,747, in construing the word "which,"
used this language:

"I feel no diminution of reverence for the framers of this
sacred instrument when I say that some ambiguity of expression
has found its way into this clause.  If the relative, 'which,' re-
fers to the word 'appointments,' that word is referred to in a
sense rather different from that in which it had been used.  It
is used to signify the act of placing a man in office, and referred

to as signifying the office itself. Considering this relative as referring to the word 'offices,' which word, if not expressed, must be understood, it is not perfectly clear whether the words, 'which' offices 'shall be established by law' are to be construed as ordaining that all offices of the United States shall be established by law, or merely as limiting the previous general words to such offices as shall be established by law. Understood in the first sense, this clause makes a general provision that the President shall nominate, and, by and with the consent of the Senate, appoint to all officers of the United States, with such exceptions only as are made in the Constitution, and that all offices (with the same exceptions) shall be establishhed by law. Understood in the last sense, this general provision comprehends those offices only which might be established by law, leaving it in the power of the executive, or of those who might be intrusted with the execution of the laws, to create, in all cases of legislative omission, such offices as might be deemed necessary for their execution, and afterwards to fill those offices. I do not know whether this question has ever occurred to the legislative or executive of the United States, nor how it may have been decided. In this ignorance of the course which may have been pursued by the government, I shall adopt the first interpretation, because I think it accords best with the general spirit of the Constitution."

We are not without authority to ignore the punctuation and to construe the section as we believe it should have been punctuated. It is commonly stated that "punctuation is no part of the statute," and that "for the purpose of arriving at the true meaning of the statute courts read with such stops as are manifestly required." *United States v. Lacher.* 134 U. S. 628, 10 Sup. Ct. 626, (33 L. Ed. 1080); *Stephens v. Cherokee Nation,* 174 U. S. 480, 19 Sup. Ct. 722, 43 L. Ed. 1041; *U. S. v. Oregon R. Co.,* 164 U. S. 541, 17 Sup. Ct. 165, 41 L. Ed. 541; *Ford v. Delta Land Co.,* 164 U. S. 674, 17 Sup Ct. 230, 41 L. Ed. 590. In the construction of laws punctuation is no criterion of the sense of the Legislature, unless it is in conformity with their intention as appears in the words they use. Punctuation is generally the act of the clerk or printer, which the court will disregard, if, taking the instrument by its four corners, and looking at all its provisions, a judicial construction points to an intention different

from what the mere punctuation indicates. This rule was observed in the case of *Durousseau v. United States,* 6 Cranch, 307, 3 L. Ed. 232, and in the case of *In re Irwine,* Fed. Cas. No. 7.086.

The case of *Hamilton v. Steamboat,* 16 Ohio St. 429, seems to be a leading case on the question at issue here. In that case the question arose as to an act of the Legislature which read as follows: "That *all* steamboats and others watercrafts, *of twenty tons burden and upward,* navigating the waters within or bordering upon this state, shall be liable, and such liability shall be a lien thereon, for all debts contracted," etc. The question was whether the liability attached to *all* steamboats, or whether it attached to all steamboats *of 20 tons burden and upward;* that is, whether the phrase, "of twenty tons burden and upwards," referred to steamboats or to watercrafts only. The court said:

"* * * If the Legislature intended the tonnage limitation to apply to steamboats as well as to other watercrafts, why was the word 'all' inserted before the word 'steamboats,' in the first line of the amended section? If that was their meaning, the word is useless, and its insertion served no purpose: but, if the word be construed to exempt steamboats from the tonnage limitation applied to other watercrafts, so as to render all steamboats liable to the provisions of the act, without reference to their tonnage, we discover a substantial reason why the word was inserted, and that a purpose is thereby subserved in accordance with the policy of the statute, and in harmony with both the original and amended sections. But for the punctuation as it stands there could be little doubt but that this was the meaning of the Legislature. Courts will, however, in the construction of statutes, for the purpose of arriving at the real meaning and intention of the lawmakers, disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statute. *Price v. Price,* 10 Ohio St. 316; Bouc. Law. Dic. 347, 402. If the punctuation in the first line followed the word 'steamboats,' the purpose for which the word 'all' was inserted in the amendments, as well as the true meaning of the section, would be more obvious. * * * It follows that actions against steamboats are not limited to those of twenty tons burden and upward, and that, therefore, it is unnecessary to al-

lege in the proceedings against them, that they are of that tonnage."

In the case of *United States v. Voorhees* (C. C.) 9 Fed. 143, the defendant was on trial for violating the U. S. Rev. St. 5209 (U. S. Comp. St. 1901, p. 3497), against embezzlement. It was a question whether a criminal intent must be proven in all of the different grades of offenses covered by this statute. McKennan, C. J., in delivering the opinion of the court, used this language:

"If it were not for the punctuation on which the district attorney has laid so much stress, there would be no doubt that the intent mentioned would apply to all the offenses mentioned; but in a criminal case, where much is to be allowed in favor of liberty, it is unsafe to rely on a mere matter of punctuation. If these offenses were separated only by commas, there would be no doubt that the intent with which the section closes would apply to all its divisions. But we think that, as it stands, the fair construction of the act, and the latter part of the section which provides that any one who aids or abets an officer in doing any of the acts with like intent shall be similarly punished, must be to make it necessary to allege and prove the intent as to all."

The punctuation as it appears in the statute and referred to by the court is a semicolon.

In the case of *In re Schilling*, 53 Fed. 81, 3 C. C. A. 440, Circuit Judge Shipman, writing the opinion of the court, among other things, said:

"It is truly said that punctuation is no part of a statute, and that, therefore, punctuation can be changed in accordance with the obvious intent of the Legislature."

In the case of *Stephens v. Cherokee Nation*, 174 U. S. 480, 19 Sup. Ct. 722, 43 L. E.d 1041, *supra*, the question arose as to the effect of a clause of an act of Congress, and the Supreme Court held that this clause should be read as though preceded by a comma, which, in effect, gave it a different meaning from that which must be given if the punctuation as it appears in the text be observed. The court, passing on the question, used this language:

"This provision is not altogether clear, and we therefore inquire: What is its true construction? * * * It is true that

the provision is somewhat obscure, although, if the comma after the words 'all citizenship cases' were omitted, or if a comma were inserted after the words 'the United States,' that obscurity would practically disappear; and the rule is well settled that, for the purpose of arriving at the true meaning of a statute, courts read with such stops as are manifestly required"—citing *Hammock v. Trust Co.,* 105 U. S. 77, 84, 26 L. Ed. 1111; *U. S. v. Lacher,* 134 U. S. 624, 628, 10 Sup. Ct. 625, 33 L. Ed. 1080; *U. S. v. Oregon & C. R. Co..* 164 U. S. 541, 17 Sup. Ct. 165, 41 L. Ed. 541.

In the case of *Ewing v. Burnett,* 11 Pet. 54 (9 L. Ed. 624), Justice Baldwin, in delivering the opinion of the court, used the following language:

"* * * The court will first take the instrument by its four corners in order to ascertain its true meaning. If that is apparent on judicially inspecting the whole. the punctuation will not be suffered to change it."

In the case of *Cushing v. Worrick,* 9 Gray, 385, the Supreme Court of Massachusetts, in construing a statute, used this language:

"It is unnecessary to resort to a draft of the bill as passed to be engrossed, in order to explain the statute as actually engrossed; for the general rule is that punctuation is no part of a statute."

The Constitution of the state of Oklahoma was drafted by men recently elected and fresh from the body of the people, and was adopted by the people themselves. It was adopted for themselves and for their posterity. It was adopted as the framework around which the Legislature, as provided for in its division of powers of the state government, should erect and build a modern system of law; adequate and commensurate with the interest of the whole people. Constitutions deal in general language and every interpretation of its powers should have a constant reference to the objects for which it was framed and adopted. It is safe to say that the people who adopted this Constitution realized the rapid growth and great increase in population that would follow the advent of the state into the Union, and that enlargement of the judiciary would become absolutely necessary. This is manifest in more instances than one. We find throughout the entire

article 7, which established the judicial departments, the frequent appearance of the phrase "until otherwise provided by law." We find in the second section of the article the provision that jurisdiction of the Supreme Court shall extend to all civil cases at law and in equity and to all criminal cases "until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law." In section 5 we find that the sessions of the Supreme Court and the duration thereof shall be fixed by rule of said court "until fixed by the Legislature." In section 8 we find that the appellate and original jurisdiction of the Supreme Court shall be invoked in the manner prescribed by the law of the territory of Oklahoma "until the Legislature shall otherwise provide by law." Section 10 fixes the jurisdiction of district courts "until otherwise provided by law." Section 14 begins with the sentence, "Until otherwise provided by law, the county courts shall have jurisdiction," etc. Section 16 begins with the sentence, "Until otherwise provided by law, in all cases," etc. Section 18 begins with the sentence, "The office of justice of the peace is hereby created and, until otherwise provided by law," etc. Thus it will be seen that almost every section of this article, as well as the section under discussion here, contains the qualifying phrase "until otherwise provided by law." This is the article of the Constitution dealing exclusively with the judicial department, creating the courts and fixing their jurisdiction. The object of the people who adopted this Constitution was not that the Constitution should be used as an iron-clad limitation on the powers of the Legislature, but, on the contrary, as we have said, should be used as a fundamental law and framework on which to erect a complete system of jurisprudence and state government. No interpretation of the words in which those powers are granted can be a sound one, which narrows down their meaning so as to defeat their objects. That would be to destroy the spirit of the Constitution, as well as to cramp the letter.

The Legislature in enacting the statute creating the superior court evidently believed the time had come in the growth and development of the state to relieve the county and district courts in

the more populous counties of some of the work in exercising the jurisdiction given them in the Constitution. It will be observed that this act creates the superior courts only in counties having a population of 30,000 or more and having a city therein of 8,000 or more.

It is the duty of this court to construe the statute as not being in conflict with the Constitution, if that construction can reasonably be arrived at. It is always to be presumed that the acts of the Legislature were not passed without mature reflection and full consideration of the provisions contained in them, and of the well-settled constitutional provisions. They are not only to be presumed to be constitutional, but the authority of the court to declare them void will only be resorted to in a clear case of conflict. In the case of *Ogden v. Saunders*, 12 Wheat. 213, 6 L. Ed. 606, *supra*, the Supreme Court of the United States announced the rule in this language:

"It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt. This has always been the language of this court, when that subject has called for its decision; and I know that it expresses the honest sentiments of each and every member of this bench."

In the case before us we feel that to hold that part of the act in question giving to the superior court concurrent jurisdiction with the county courts in criminal cases in conflict with the Constitution would be to defeat the purpose and object, not only of the act itself, but the manifest purpose and object, embodied in section 12 of the Constitution. We are therefore of the opinion that that portion of the act conferring jurisdiction on the superior court concurrent with the county court in all criminal matters is not in conflict with the Constitution, and that the superior court had jurisdiction to try the petitioner, and to render the judgment and sentence as appears from the record in this case.

The writ is denied.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.