## CHICKASHA COTTON OIL CO. v. GRADY COUNTY et al.

No. 24538. April 7, 1936.

Rehearing Denied June 16, 1936.

Melton & Melton, for plaintiff in error.

Bond, Hatcher & Bond, for tax ferrets of Grady County.

Gerald Spencer, Co. Atty., and Owen Vaughn, Asst. Co. Atty., for Grady County.

C. B. Cochran, amicus curiae.

GIBSON, J. This action, of that character commonly referred to as a tax ferret proceeding, was commenced by the county treasurer of Grady county pursuant to section 12346. O. S. 1931, for the purpose of listing and assessing certain property of defendant allegedly omitted from the ad valorem tax rolls of that county for certain prior years.

The treasurer, upon a hearing, determined that the defendant possessed no omitted property for the years named, and the state appealed to the county court pursuant to said section 12346. Upon a trial de novo in that court pursuant to section 12348, O. S. 1931, judgment resulted fixing the value of the property and ordering the same assessed accordingly and placed upon the rolls for the years 1921 to 1930, inclusive. The defendant has appealed from that judgment.

In addition to the other propositions submitted under the numerous assignments of error, it is urged that the county court was without jurisdiction to entertain this cause on appeal from the county treasurer.

Defendant says that the foregoing statutes, in so far as they authorize appeal and trial in the county court, constitute an attempt to increase the powers of such court and are invalid, in that the Legislature was without constitutional authority to grant such additional powers. In this connection it is urged that the jurisdiction of the county court is limited by sections 12 and 14, art. 7, of the Constitution, and that the powers therein conferred may not be enlarged or decreased by the Legislature. As authority for the foregoing proposition, our attention is called to Ozark Oil Co. v. Berryhill, 43 Okla. 523, 143 P. 173; State v. Russell, 33 Okla. 141, 124 P. 1092; Armstrong v. Letty, 85 Okla. 205, 209 P. 168. It is further suggested that this inhibition applies as well to attempted administrative as to judicial powers.

There is the further contention that if the trial in the county court constitutes an administrative function, the statute is void for the further reason that it violates section 1, art. 4, Constitution, as an attempt to confer legislative powers upon the judicial branch of the government. In support thereof, the defendant cites In re Assessment Kansas City Southern Ry., 168 Okla. 495, 33 P. (2d) 772.

Our amicus curiae, whose brief we have considered with much interest, calls our attention to numerous decisions which he believes authority for the latter proposition. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002; Ex parte State of Oklahoma, 37 Fed. (2d) 862; Rounds & Porter Lbr. Co. v. Livesay, 66 Fed. (2d) 298; Porter v. Investors Syndicate, 286 U. S. 461; In re

Daniels' Omitted Property, 108 Okla. 195, 235 P. 543.

After due consideration of the authorities and the constitutional provisions bearing upon the question, we have concluded that the county court in such cases performs purely judicial functions.

In Anderson v. Ritterbusch, supra, the tax ferret statute, prior to amendment, was attacked on certain constitutional grounds not here urged. The action was one for prohibition commenced in this court against a county treasurer to prohibit the treasurer from proceeding against the plaintiff under the statute. The constitutionality of the statute was sustained here. The opinion contains certain statements indicating that proceedings for the assessment of omitted property were considered by the court as ministerial and not judicial, but the decision does not stand for that rule. The proceeding is there termed remedial; and we believe the rules therein laid down and the expressions of the court in connection therewith conclusively brand the action when tried in the county court as exclusively judicial. We are not unmindful of the rule that the act of raising revenue by public officials in pursuance of the revenue laws of the state is an administrative function coupled with certain duties quasi-judicial in nature. The levying of taxes under revenue laws to be collected and used in the future presents a proceeding bearing a legal aspect distinctly different from a proceeding to collect a debt already due. Any taxes that may be properly payable to the state upon property omitted from the tax rolls constitutes a debt due the state. Anderson v. Ritterbusch, supra. There this court said:

"Taxes due the territory of Oklahoma prior to statehood on account of omitted property, constituted a debt accruing to the territory, under section 3 of the schedule (Bunn's Ed. sec. 452) to the Constitution, and the Legislature of the state may make provisions for the recovery of such taxes by the state."

Statutes authorizing assessment and collection of taxes on omitted property are not "revenue laws." Id., syllabus 2. The statutes are remedial; they grant the state a new remedy for the enforcement of a right it at all times possessed.

While the treasurer is an administrative officer, in the remedial proceeding in question, he exercises quasi-judicial powers, and on appeal the matters before the county court are all matters typically judicial. It ascertains whether or not there is a debt due from the defendant taxpayer to the plaintiff, the state of Oklahoma, and the amount thereof; and the judgment is final unless appealed from. We can discover no characteristics of an administrative nature in the entire proceeding before the court.

We think this case in all respects analogous to the case of City Bank v. Schnader, 291 U. S. 24, 54 S. Ct. 259, cited with approval by this court in Re Assessment of Kansas City Southern Ry. Co., supra. The Schnader Case involved the valuation and assessment of inheritance transfer tax in Pennsylvania. An officer of the revenue department was charged with the duty of appraising the property. From this valuation the taxpayer could appeal to the county court, which, upon a trial de novo, was authorized to determine all questions, including the valuation of the property and liability for the tax. The Supreme Court there held, as quoted in the Kansas City Southern Case, supra:

" '* * * Since the Dauphin county court is empowered, upon appeal from the action of the appraiser, to determine all questions, including both valuation and liability for the tax, the contention is made that its function is at least in part administrative, and a suit for injunction may not be entertained by a federal court prior to the decision of the state court. Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226. The statutes under consideration in those cases delegated legislative power of regulation to an administrative body and vested a revisory power in a court. As has repeatedly been held, the action of the court in such a matter is legislative rather than judicial, so that one who has not pursued the legislative process to a conclusion cannot turn to a court of equity for relief from a regulatory order which is not the final word of the constituted state authority. But other decisions make it clear that, while the action of the appraiser in a case like the present is purely administrative, the function of the court upon appeal is judicial in character, if, when the case is brought into the court, the commonwealth becomes plaintiff and the taxpayer defendant, and the action is tried as an ordinary action, resulting in a judgment which is final and binding on the parties, subject only to appeal to a higher court, as permitted by the act. This renders the proceeding judicial, and gives it the character of a suit or action at law. * * *

" 'If the Dauphin county court were by the act of Assembly granted only the right to revise the valuation of the appraiser and precluded from considering any other question, its proceedings would be purely administrative."

This holding should control our conclu-

sion in this case as to the function of the county court. The statute confers no revisory power upon the court, but places upon it the duty to hear and determine questions of law and fact relating entirely to matters already accrued, and the decision is in no manner regulatory of matters to accrue. The absence of regulatory power in the court is strongly indicative of exclusive judicial power. The judgment of the county court in such cases "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." Such is a judicial inquiry. Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150.

Appeals to the county court in omitted property cases are taken in the same manner (sec. 12346, O. S. 1931) as are appeals from the county commissioners to the district court (sec. 7679 et seq., O. S. 1931). The action of the district court on appeal under the latter statute is judicial. In re Bucher, 162 Okla. 168, 20 P. (2d) 150; Holcombe v. Major Co., 173 Okla. 539, 49 P. (2d) 106. Since the duties of the county treasurer in ferret cases are quasi-judicial in nature, and since the decision of the county court on appeal is based upon past or present facts and upon laws already existing and directs no future regulatory action, we see no reason for branding the proceeding as one administrative in character, and as one essentially different from appeals from the board of county commissioners in quasi-judicial matters to the district court.

In Porter v. Investors' Syndicate, supra, appeals from the action of the Investment Commissioner of Montana to the district court were under consideration. The Supreme Court of the United States there said:

"The duty is laid on the court to examine the evidence presented and either to set aside or to modify or to affirm the commissioner's order as the proofs may require. The legislative process remains incomplete until the action of that court shall have become final."

The statute under consideration was one authorizing the commissioner to grant or revoke permits. The court was authorized to modify the order of the commissioner. Such an act is administrative and not judicial when relating to the granting of permits or licenses. We have no authority in the court in the present case to set aside, modify, or affirm the action of the treasurer. The court renders and enters an original judgment and the matter is not remanded to the treasurer under any circumstances; and no revisory power is conferred upon the court as was done in the Montana statute. This is made clear by the holding of this court in Re Daniels' Omitted Property, supra. There, in reference to ferret cases, we said:

"* * * Such was the question in the hearing before the treasurer and such it was before the county court. A trial de novo is one had anew and in complete disregard of the first trial and the decision therein rendered. In such a case all the proceedings had in the first trial, including the decision therein, are wholly disregarded in the trial de novo on appeal, and, except for the purpose of assuming jurisdiction to conduct a new and second trial, the proceedings in the first trial and the decision rendered therein are given only the same regard as if they had never occurred. When the county court tries the case on appeal, no assessment is in existence, for the treasurer's action did not become of any legal effect on account of the appeal taken. Being of no legal effect, it is incompetent as evidence of the correctness of what it shows."

While the court in the Daniels Case said that the hearing in the county court was to determine whether one already made should be vacated, we do not interpret the statement as meaning that the proceeding was one for the assessment of property under the revenue laws, and an administrative act, contrary to the holding in the Ritterbusch Case. The duty of the county court, as we have said, is not to make an assessment under the revenue laws of the state, but to determine the question of an alleged debt due from the defendant taxpayer to the plaintiff, the state of Oklahoma.

In Rounds & Porter Lbr. Co. v. Livesay, supra, and in Ex parte State of Oklahoma, supra, the Circuit Court of Appeals, contrary to our present views, held that the action of the county court under our ferret statute constituted an administrative function in that the proceeding was one for the levy of taxes. We are unable to accept this construction of the statute under consideration in view of the treatment accorded the statute in the Ritterbusch Case.

The defendant now makes the contention that the county court was created and its jurisdiction fixed by the Constitution, and that the Legislature is powerless to take from or add to that jurisdiction. Section 12, art. 7, Constitution. The rule is expressed in State Bar Commission v. Sullivan, 35 Okla. 745, 131 P. 703, 711, as follows:

"It is a general rule that the Legislature is powerless to interfere with the jurisdic-

tion, functions, or judicial powers conferred by the Constitution upon a court, nor can it diminish, enlarge, transfer, or otherwise infringe upon the same."

The foregoing rule is quoted from 11 Cyc. 706 (15 C. J. 858, sec. 181), but we find in 15 C. J. 859, the following:

"Where the organic law delegates to the Legislature the power to create * * * courts, to regulate their jurisdiction or otherwise to legislate concerning them, that body may do so, subject to whatever restrictions or limitations are imposed."

The text cites Parker v. Hamilton, 49 Okla. 693, 154 P. 65.

In view of the last stated rule, it would appear that the Legislature had power to confer jurisdiction on the county court in omitted property cases unless prevented from so doing by some constitutional provision. That it is not so restricted or limited is well settled by decisions of this court. In Burks v. Walker, 25 Okla. 353, 109 P. 544, we have the statement of Justice Hayes, the author of the opinion, as follows:

"* * * A careful reading of the various provisions of the Constitution by which jurisdiction is conferred upon all the courts, except the Supreme Court, will readily disclose that it was the policy of the framers of the Constitution in a great measure to leave the question of jurisdiction of the various courts of the state subject to legislative disposition and control. And, when the condition of the courts and their dockets at the time of the framing of the Constitution is recalled, it can be readily understood why the framers of the Constitution did not undertake to fix by hard and fast rule the jurisdiction of the inferior courts of the state. Two different judicial systems had theretofore prevailed within the territory now constituting the state. The dockets of all the courts were badly crowded, and it was impossible to foretell just what division of jurisdiction between the various courts would enable the courts of the state to dispose of the business already accumulated upon the dockets and that might reasonably be expected to arise."

There (page 359 of 25 Okla.), page 547 of Pacific Reporter, this court concurred fully with the "reasoning and conclusion" of the Criminal Court of Appeals of this state in Ex parte Whitehouse, 3 Okla. Cr. 97, 104 P. 372, wherein it was held that the provisions of section 12, art. 7, Constitution, defining the powers of the county court, except the proviso containing specific inhibitions, were qualified by the phrase, "until otherwise provided by law." Finerty v. Williams, 81 Okla. 10, 196 P. 709, 715.

Examining the Whitehouse Case, which

stands fully approved by this court in the last-cited decisions, we find that the phrase, "until otherwise provided by law," contained in section 12, art. 7, Constitution, extends to all provisions of said section following such phrase, except those provisions definitely excluding the jurisdiction of the county court in specific cases, and that the Legislature was thereby empowered to increase or restrict the jurisdiction of the court as to all matters where the Legislature was not specifically restricted.

The Constitution does not prohibit the Legislature from conferring jurisdiction upon the county court in proceedings of the character here under consideration. In the absence of restriction, such matter is a proper subject of legislation, and the Legislature may not be inhibited by implication in the enactment of such laws. Section 12 authorizes the Legislature to provide by law for appeals to the county court from courts of justices of the peace, but that specific grant of authority may not work a restriction or limitation upon the Legislature's authority to provide for the right of appeal to the county court from the action of the county treasurer in ferret proceedings. Section 36, art. 5, Constitution. The purpose of this section is to prohibit the limitation of legislative authority by implication.

Contrary to defendant's contention, the denial of a jury trial in the county court did not violate section 19, art. 2, Constitution. The proceeding was created by statute and did not exist when the Constitution was adopted. Section 19, art. 2, applies to only those rights existing when the Constitution was adopted. State v. Cobb, 24 Okla. 662, 104 P. 361; Parker v. Hamilton, 49 Okla. 693, 154 P. 65.

The property sought to be taxed in this case consisted of certain bales of cotton in possession of the Traders Compress at Chickasha on the first day of January of each of the years 1920 to 1930, inclusive, for account of the defendant. The state has abandoned its cause as to the year 1920.

The findings and judgment of the trial court as to the quantity of cotton in possession of the compress to the credit of defendant on assessment day of each of the years 1921 to 1927, inclusive, were based upon the testimony of the witness Mary Winfrey. This witness had been bookkeeper for the Traders Compress during those years; and by stipulation it was agreed that the records of the compress and the defendant had been lost or destroyed.

It developed that Mrs. Winfrey had charge

of the records showing the accounts of the customers of the compress, and each week made a report of the exact number of bales on hand to the credit of each individual customer. She had not inspected those records for any year since the close of business of the respective years.

The state sought to establish the number of bales to the credit of defendant on each assessment day in the manner disclosed by the following question and answer:

"Q. Do you have any recollection based on the record you kept of the number of bales of cotton the Chickasha Cotton Oil Company had on the press on the first day of January for the various years? A. Counting the number of bales the Traders Compress would have on the press at the time and knowing that the Chickasha Cotton Oil Company was the largest shipper, I can say, in my best judgment."

The witness then testified that the capacity of the press in 1920 was 10,000 bales, and that on the first day of that year the defendant had about 1,500 bales. She further testified that on the first day of January, 1921 and 1922, she would say the defendant had 3,000 bales, and for each of the years 1923, 1924, 1925, 1926, and 1927, 5,000 bales.

On cross-examination this witness testified that on January 1, 1921, there were 2,500 bales of cotton on the press; 7,000 or 8,000 in 1922; 8,000 or 10,000 in 1923; 8,000 or 10,000 in 1924; 8,000 or 9,000 in 1925; 8,000 or 9,000 in 1926, and 8,000 or 9,000 in 1927. She further testified that according to her recollection the defendant owned 20 per cent. of the cotton on the press on the first day of January each year, 1924 to 1927, inclusive; she was unable to arrive at the percentage owned by defendant in 1921, 1922, and 1923.

The appeal brings up the question of the sufficiency of the evidence to support the judgment ordering the property assessed for the years 1921 to 1927, inclusive.

A tax ferret proceeding before the county court is not an action properly triable before a jury, and, when considering questions arising under the laws of evidence in connection therewith, this court will treat such proceeding as one purely equitable in nature. In such case, where the question is properly saved on appeal, as it was here, this court will review the whole record for the purpose of ascertaining whether the judgment of the trial court is clearly against the weight of the evidence. Papoose Oil Co. v. Swindler, 95 Okla. 264, 221 P. 506, 507.

In reviewing the record, this court will consider all evidence properly received, and will reject that improperly received; the cause will not be reversed for error committed in the reception of improper evidence, but we may reverse for error committed in rejecting proper evidence where the error is properly saved for review.

With the foregoing rules in mind, we have reviewed all the evidence in the instant case. We are convinced that under the decisions of this court the evidence is insufficient to support the judgment of the trial court for the years 1921 to 1927, inclusive, and that such judgment is against the clear weight of the evidence. In a tax ferret proceeding the burden of proof is upon the state to establish the fact that the defendant owned the personal property in question on the particular assessment day; the situs of the property; the value thereof, and that it escaped taxation for the years named. Milbourn v. State, 168 Okla. 168, 32 P. (2d) 291. In the instant case the state has failed to sustain that burden as to the years last mentioned.

The evidence of Mary Winfrey was based upon written records of the facts sought to be proved. In view of the fact that those records were lost, her recollection of what they contained was competent evidence to establish the amount of cotton to the credit of defendant at the compress on given days. But in such case the witness must establish the fact that he possesses actual recollection, and can testify within a reasonable approximation of the real contents of such lost records. In order for such evidence to be of any probative value, the recollection of the witness must appear to be positive and certain so as to lift his testimony above that class of evidence denominated guesswork, conjecture, speculation, or probability. In this respect Mrs. Winfrey's testimony failed. Her evidence failed to reach the point of probative value.

The witness clearly revealed that she had no more than a casual recollection of the contents of the lost records. Her recollection thereof was not sufficiently clear to warrant a reasonable approximation of the amount of cotton to the credit of defendant on such days. She admitted her inability to approximate the number of bales there on January first for the years 1921, 1922 and 1923. She testified as to the number of bales there on January 1, 1920, and later remembered she did not work for the compress at that time. There were other customers of the compress, and

on cross-examination she was unable to give any information as to the amount of cotton owned by any of them. She admitted she knew nothing about many of them. It appears that her opportunity of knowing those facts was equal with her opportunity of knowing the facts relative to cotton credited to defendant. The amount of cotton on hand on assessment days, if any, to defendant's credit was left wholly uncertain and vague by the evidence.

Such evidence is not of that character termed reasonably certain, and sufficient to remove it from that class of evidence denominated guesswork, conjecture, speculation, or probability, and is insufficient to sustain the burden of proof placed upon the plaintiff in this case, and therefore insufficient to support the judgment of the trial court as to the years here considered.

In R. C. Jones Cotton Oil Co. v. State, 139 Okla. 212, 282 P. 622, this court has expressed itself on this type of evidence as follows:

"This proceeding instead of being one to place on the tax rolls omitted property discovered by the tax ferret, as provided by law, appears to be one to discover whether or not there was omitted property. * * *

"This court has often had occasion to say that a party shall not be required by the courts of this state to pay out his money unless his obligation to pay the same is based upon reasonably certain evidence, and, emphasizing this rule, has said that neither the courts nor the juries of this state shall cause a man to pay out his money upon guesswork, conjecture, speculation or probabilities, and has said in no uncertain terms that this is a part of the fundamental laws of the state."

The judgment of the trial court ordering the property assessed for 1921 to 1927, inclusive, must therefore be reversed.

There is no dispute in this case as to the number of bales of cotton in possession of the compress company to the credit of defendant on the respective assessment days of the years 1928, 1929, and 1930.

It is the contention of defendant that the cotton here in question was in the channels of interstate commerce on said assessment days and therefore not subject to ad valorem taxation in Grady county. From an examination of the entire record we must determine whether or not the judgment of the trial court to the contrary is against the clear weight of the evidence.

The burden of proof was upon defendant to show that the cotton credited to it on said assessment days was not subject to taxation in Grady county.

The evidence shows that the cotton was shipped largely by rail to the compress at Chickasha. The compress was used as a concentration point, and for the purpose of storage of the cotton and the compressing thereof preparatory to shipment pursuant to orders for such cotton already received and sales thereafter to be made by defendant. The compress charged to and collected storage from defendant. In the shipments to the compress the defendant was consignee and Chickasha the destination. Compressing and shipping were done by the compress on order from defendant. All, except a negligible quantity, was shipped to points outside the state. When the shipments reached Chickasha, the carrier delivered the property to the compress and the original shipment ended; the carrier had no further control or supervision of the shipment.

The question here presented is whether state power to levy a nondiscriminatory property tax is in conflict with the paramount authority of Congress under the Constitution to regulate interstate commerce. Obviously, if interstate movement had not commenced prior to assessment day, the question of interstate commerce cannot be present, for, as has been stated by the Supreme Court, "The crucial question, in determining whether the state's taxing power may thus be exercised, is that of continuity of transit." Minnesota v. Blasius, 290 U. S. 1, 78 L. Ed. 131.

In the instant case the cotton was concentrated at Chickasha for the convenience of the defendant to be disposed of at its pleasure and according to its own best business judgment. Each shipment coming into Chickasha was a complete shipment. There was no other destination fixed. There is no indication of movement from the state and no continuation of such movement at assessment time.

With relation to the question of interstate commerce, we believe the facts here sufficiently analogous to the facts presented by the case of General Oil Co. v. Crain, 209 U. S. 213, 52 L. Ed. 754, to make the decision in that case controlling of the question here. In that case defendant shipped oil from other states into Tennessee for the purpose of reshipment into other states to fill orders for oil already sold and to be sold in such other states. The oil already sold was stored in a tank marked "Oil already sold in Arkansas, Louisiana and Mississippi." The other tank, or tank No. 2, was marked

"Oil to be sold in Arkansas, Louisiana and Mississippi." In speaking of the contention of the taxpayer, the court said:

"* * * It is contended that the oil in both tanks was in transit from the place of manufacture, Pennsylvania, to the place of sale, Arkansas. The delay at Memphis, it is urged, was merely for the purpose of separation, distribution, and reshipment, and was no longer than required by the nature of the business and the exigencies of transportation. The difference in the oil in tank No. 1 and that in tank No. 2, it is further said, is that the former was sold before shipment, and the latter was to be held in Tennessee for sale; but in neither case was the oil to be sold in Tennessee, and it is hence insisted that the interstate transit of the oil was never finally ended in Memphis, but was only temporarily interrupted there."

There the court further said:

"The beginning and ending of the transit which constitutes interstate commerce are easy to mark. The first is defined * * * to be the point of time that an article is committed to a carrier for transportation to the state of its destination, or started on its ultimate passage. The latter is defined to be * * * the point of time at which it arrives at its destination. But intermediate between these points questions may arise."

At no time in the instant case was the property "committed to a carrier for transportation to the state of its destination, or started on its ultimate passage," prior to assessment day.

In deciding the question in General Oil v. Crain, supra, the court held as follows:

"This certainly describes a business,—describes a purpose for which the oil is taken from transportation, brought to rest in the state, and for which the protection of the state is necessary,—a purpose outside of the mere transportation of the oil. The case, therefore, comes under the principle announced in American Steel & Wire Co. v. Speed, 192 U. S. 500, 48 L. Ed. 538, 24 Sup. Ct. Rep. 365.

"We have considered this case so far in view of the cases which involve the power of taxation. It may be that such power is more limited than the power to enact inspection laws. Patapsco Guano Co. v. Board of Agriculture, 171 U. S. 356, 43 L. Ed. 195, 18 Sup. Ct. Rep. 862. The difference, if any exists, it is not necessary to observe. The cases based on the taxing power show the contentions of plaintiff in error are without merit; in other words, show that its oil was not properly in interstate commerce."

It is true, the tax in that case was in the nature of an excise allegedly levied under the police power of the state, but it will be observed that the court considered the tax as governed by the same rules as general or ad valorem taxation.

The evidence failed to establish that the cotton was moving in interstate commerce on January first of the years 1928, 1929, and 1930. We hold, therefore, that the judgment of the trial court in this respect is not against the clear weight of the evidence.

Prior to each assessment day in question the defendant received orders from foreign buyers for certain quantities of cotton. These orders were to be filled by shipments subsequent to assessment day. The defendant contends the trial court erred in holding that these orders were not present sales of the cotton thereafter shipped in pursuance of such orders.

If in fact a sale had been consummated prior to assessment day, the state could not tax defendant for the cotton so sold. The burden to establish the sales was upon defendant. It is made clear by the evidence that the defendant at any time could have sold and shipped the cotton on hand to any buyer other than those buyers who had submitted orders. The orders covered no specific bales.

Under a contract for the sale of goods which have not been identified, title does not pass before delivery until specific chattels have been appropriated to, and identified or designated as the subject-matter of the contract. 55 C. J. 541, sec. 543. The orders here related to a portion of a mass of property. In such case, ordinarily title does not pass to the buyer until the portion contracted to be sold is separated and set apart for the buyer. 55 C. J. 542. If the intention of the parties in such case is that title pass before separation of the goods, the intention controls. Id., sec. 546. In the instant case there was clearly no such intention, for, as we have said, the defendant was left free to dispose of any part or all of the cotton to which the orders may be said to have related. If title had passed to a portion of the unseparated mass, that portion would necessarily have to remain intact for the buyer. We find no error in the judgment of the trial court in this respect.

Defendant says the trial court erred in refusing to make certain findings of fact upon defendant's timely motion therefor. The refusal of the court to make the re-

quested findings was not error. They did not relate to facts material to the issues.

The judgment of the trial court is there-fore affirmed as to the years 1928, 1929, and 1930, and reversed as to all years prior thereto, and the cause is remanded, with directions to enter judgment in accordance herewith.

McNEILL, C. J., and BAYLESS, WELCH, and CORN, JJ., concur.